UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOSH COLLETTE, an individual,

Plaintiff,

v.

VISION SECURITY, LLC, NORTHSTAR ALARM SERVICES, LLC, and DOES 1-20, inclusive,

Defendants.

No. 2:15-cv-00426-MCE-DB

**MEMORANDUM AND ORDER**

Through this action, Plaintiff Josh Collette ("Plaintiff") seeks to recover damages from Defendants Vision Security, LLC ("Defendant Vision"), NorthStar Alarm Services, LLC ("Moving Defendant" or "Defendant NorthStar"), and Does 1 through 20, alleging breach of contract and two common counts for services provided under a quantum meruit theory. The only claim alleged against Defendant NorthStar is a single common count for services provided. Defendant NorthStar now moves for partial summary judgment as to that count on grounds that because Plaintiff's services were performed solely at the request of Defendant Vision and for its benefit, those services cannot be linked to Defendant NorthStar in either fashion. For the reasons set forth below, Defendant's motion is DENIED.[1]

---

[1] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with E.D. Local Rule 230(g).

1

## BACKGROUND[2]

Beginning in September 2011, Plaintiff managed a team of door-to-door salesmen selling home security systems and associated system monitoring on behalf of Defendant Vision. Pl.'s Compl., ECF No. 1. Under the terms of Plaintiff and Defendant Vision's alleged oral agreement, compensation for Plaintiff's sales was based upon a commission formula that calculated numerous factors including the homeowner's credit score, the length of any monitoring contract, and installation costs. Dep. of Collette, ECF No. 36-3, 51:3-53:25.

From September 2011 until January 2014, Plaintiff sold security systems and associated monitoring systems on Defendant Vision's behalf, primarily to homeowners within Sacramento County. During that time, Plaintiff alleges he earned a total of $390,616.09 but was paid only $101,736.54. According to Plaintiff, $288,879.55 of his commissions therefore remain due and owing from Defendant Vision. Compl., ECF No. 1 ¶¶ 21-22. Plaintiff concedes he did not generate alarm monitoring accounts for Defendant NorthStar during the pertinent time period.

A year after Plaintiff ceased making sales on Defendant Vision's behalf, Defendant NorthStar purchased nearly 8,000 accounts from Defendant Vision. Id. at ¶ 26. Defendant NorthStar states that these accounts were purchased in January 2015 via an "arm's-length transaction" in which Defendant NorthStar provided substantial payment and consideration to Defendant Vision for the alarm monitoring accounts pursuant to an asset purchase agreement. Def.'s SSUF, ECF No. 36-2 ¶ 14. Moving Defendant consequently asserts that it was a bona fide purchaser of the 8,000 accounts. Def.'s Answer, ECF No. 11, 7:14. Plaintiff alleges, however, that Defendant NorthStar

///

///

---

[2] The following recitation of facts is taken, sometimes verbatim, from Plaintiff's Complaint, ECF No. 1, Defendant NorthStar's Motion for Partial Summary Judgment, ECF No. 36, and from a general review of the docket.

knew that the purchased accounts included accounts Plaintiff had established on behalf of Defendant Vision and for which Plaintiff had not received just compensation.[3]

The 2015 asset purchase agreement between Defendants Vision and NorthStar was signed by Robert Harris and John Daniel Noble as representatives of Defendant Vision. Pl.'s Opp'n, ECF No. 41-4 at Ex. 2. Robert Harris is currently the Chief Executive Officer of Defendant Vision, as well as President and board member of Defendant NorthStar. John Daniel Noble is currently the President of Defendant Vision, as well as Chief Operating Officer of Defendant NorthStar. Id. at Ex. 3-4. Defendant NorthStar states that neither Robert Harris nor John Daniel Noble had any affiliation with Defendant NorthStar prior to the completion of the January 2015 asset purchase agreement. Def.'s Reply, ECF No. 45.

Plaintiff, on the other hand, alleges he had both formal and informal interaction with Defendant NorthStar during the period of time when he was generating accounts on behalf of Defendant Vision, including what Plaintiff regarded as recruitment meetings between himself and Defendant NorthStar. Decl. Feuz, ECF No. 36-3, 49-50. Plaintiff also alleges that there was communication between himself, Robert Harris, and John Daniel Noble concerning Defendant Vision's outstanding payment amounts prior to the asset purchasing agreement between Defendants. Pl.'s Opp'n, ECF No. 41-4 at Ex. 6. Consequently, Plaintiff alleges Defendant Northstar purchased security monitoring accounts with knowledge that Plaintiff had created the accounts and had not been fully compensated.

Plaintiff's complaint was filed on February 24, 2015. Moving Defendant's Motion for Partial Summary Judgment was filed on December 28, 2016, with Plaintiff's Opposition filed February 9, 2017. Defendant NorthStar subsequently filed a Reply on March 9, 2017.

///

---

[3] For the purposes of the instant motion, Defendant NorthStar does not dispute that some of the accounts purchased from Defendant Vision were originally generated by Plaintiff. Def.'s SSUF, ECF No. 36-2, 4.

3

# STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to a motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do

not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. 87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

///

///

///

**ANALYSIS**

Plaintiff asserts that he is entitled to unpaid commissions under a quantum meruit theory. Defendant NorthStar moves for partial summary judgment on grounds that, because Plaintiff's services were neither performed at its request or for its benefit, his common count for services provided based on quantum meruit necessarily fails.

Quantum meruit is an equitable remedy under California law pursuant to which a plaintiff who has rendered services benefitting the defendant may recover the reasonable value of those services in order to prevent unjust enrichment of the defendant. King v. Nat'l Gen. Ins. Co., 129 F. Supp. 3d 925 (N.D. Cal. 2015).

To recover under a quantum meruit theory, a plaintiff must establish "that he or she was acting pursuant to either an express or implied request for services from the defendant and that the services rendered were intended to and did benefit the defendant." Ochs v. PacifiCare of California, 115 Cal. App. 4th 782, 794 (2004); Day v. Alta Bates Medical Ctr., 98 Cal. App. 4th 243 (2002).

In order to determine whether there has been a request for services, courts have looked to whether the recipient of the performed services either requested them expressly, or impliedly requested them by acquiescing in the receipt of performed services. Producers Cotton Oil Co. v. Amstar Corp., 197 Cal. App. 3d 638, 659-660 (1988). (Finding an implied request where the party being charged with payment of service had received the benefit during the harvesting of sugar beets when (1) there was knowledge that the crop was being harvested, (2) no inquiry was made about how those costs were to be paid, and (3) a subsequent benefit was received through sale of the harvest.)

The second prong of the quantum meruit analysis hinges upon the defendant's receipt of a benefit. Courts pay particular attention when "one party has accepted and retained a benefit with full appreciation of the facts, under circumstances making it inequitable for him to retain the benefit without payment of its reasonable value."

Truestone, Inc. v. Simi West Industrial Park II, 163 Cal. App. 3d 715, 724 (1984) (quoted in Day, 98 Cal. App. 4th at 248). A quantum meruit claim is particularly apt where the defendant acquires the benefit with knowledge of the circumstances establishing unjust enrichment. King v. Nat'l Gen. Ins. Co., 129 F. Supp. 3d 925 (N.D. Cal. 2015). Further, "a transferee with knowledge of the circumstances giving rise to an unjust enrichment claim may be obligated to make restitution. For example, '[a] person… is entitled to restitution from a third person who had notice of the circumstances before giving value or before receiving title or a legal interest in the subject matter.'" (Rest., Restitution, § 13(b)) (quoted in First Nationwide Savings v. Perry, 11 Cal. App. 4th 1657 (1992)).

      Defendant NorthStar argues that there are no triable issues of fact supporting the claim that Plaintiff's services were requested by or performed for the benefit of the Moving Defendant. Defendant NorthStar asserts that any interconnectedness on behalf of corporate officers Robert Harris and John Daniel Noble with Defendant NorthStar occurred after and as part of the January 2015 asset purchase agreement. Def's. Reply, ECF No. 45, 4. Moreover, Defendant NorthStar asserts that any co-mingling of corporate leadership is not indicative of notice or knowledge by Defendant NorthStar as to any nonpayment allegations made by Plaintiff for accounts generated on behalf of Defendant Vision. Id.

      The parties agree that during the execution of the oral agreement between Plaintiff and Defendant Vision, Plaintiff did not generate any alarm monitoring accounts directly for Defendant NorthStar. Pl.'s SSUF, ECF No. 41-2 ¶ 5. Plaintiff nonetheless alleges, however, that Defendant NorthStar received a benefit from the accounts originally generated on behalf of Defendant Vision. Id. at ¶ 9. Further, Plaintiff alleges Defendant NorthStar had notice of Plaintiff's claim for nonpayment prior to the January 2015 asset purchase agreement. Pl.'s Opp'n, ECF No. 41. Plaintiff points to the fact that both Robert Harris and John Daniel Noble held leadership positions within both Defendant Vision and Defendant NorthStar as evidence of this notice. Id. Plaintiff also alleges specific conversations that took place between Plaintiff, Robert Harris, and John

Daniel Noble, both in person and via email, that discuss in clear terms the nonpayment of Plaintiff's services provided to Defendant Vision from September 2011 to January 2014. Pl. Opp'n, ECF No. 41-4 at Ex. 6. In his deposition, Plaintiff stated that he had discussed with both Robert Harris and John Daniel Noble the alleged outstanding amount due and owing to Plaintiff prior to the January 2015 sale of accounts. Id.

Thus, Plaintiff asserts that through Robert Harris and John Daniel Noble, Defendant NorthStar knew it was purchasing accounts from Defendant Vision that had been generated by Plaintiff without just compensation, and therefore at least impliedly acquiesced to the provision of those services by Plaintiff and the benefit they conferred.

As mentioned above, it is undisputed, at least for purposes of this motion, that a portion of the accounts purchased by Defendant NorthStar from Defendant Vision as part of the January 2015 asset purchase agreement were accounts originally generated by Plaintiff.[4] Therefore, the crux of the matter before this Court is the interconnectedness of the two Defendants, and whether that interconnectedness creates an implied request for services and benefit received on the part of Defendant Northstar, with the knowledge that Plaintiff was claiming that he had not received just compensation for those services. While the Moving Defendant asserts an absence of a genuine issue of material fact surrounding whether Defendant Northstar is liable under a quantum meruit theory for the benefit of services provided by Plaintiff, this Court disagrees.

Plaintiff's opposition points out that both Defendants are residential alarm service providers headquartered in Orem, Utah. Compl., ECF No. 1. The pleadings suggest that the two Defendants are intrinsically interrelated, with Robert Harris and John Daniel Noble holding leadership positions within both companies. Pl.'s Opp'n, ECF No. 41-4 at Ex. 3-4. Additionally, these two men purportedly had communications with Plaintiff concerning the alleged nonpayment of services provided before the sale of accounts to

---

[4] Def.'s SSUF, ECF No. 36-2 4, 2 n.3.

8

| | |
|---|---|
| 1 | Defendant NorthStar. Decl. Feuz, ECF No. 36, 3:49-50. Moreover, Robert Harris and |
| 2 | John Daniel Noble acted as Defendant Vision's signatories on the January 2015 asset |
| 3 | purchase agreement between Defendants. Pl.'s Opp'n, ECF No. 41-4 at Ex. 2. The |
| 4 | parties agree, at least for this motion, that accounts purchased by Defendant NorthStar |
| 5 | did include customer accounts generated by Plaintiff. Def.'s SSUF. ECF No. 36-2, 4. |
| 6 |       Based on these assertions, Plaintiff has raised a triable issue of fact with respect |
| 7 | to whether the companies are so interrelated that the performance of services and |
| 8 | benefit received for one company would essentially amount to an implied request for the |
| 9 | performance of services and a benefit received for the other. Through the pleadings |
| 10 | alone, Plaintiff has raised a triable issue of fact as to whether Defendant NorthStar, |
| 11 | because of the interrelatedness of its corporate officers and its purchase of Plaintiff- |
| 12 | generated accounts for which Plaintiff had not been fully compensated, impliedly |
| 13 | requested both Plaintiff's services and the benefits they produced. |
| 14 |       Those triable issues proliferate when additional factual matters beyond the |
| 15 | pleadings are considered. Drawing all inferences from this evidence in favor of Plaintiff |
| 16 | as the Court is required to do, the Court finds that the facts detailed above suggest that |
| 17 | Plaintiff was not fully compensated for accounts that ultimately benefitted Defendant |
| 18 | NorthStar. Further, as also explained above, facts concerning the interrelated corporate |
| 19 | leadership of Defendant Vision and Defendant NorthStar suggest Defendant NorthStar |
| 20 | had knowledge of Plaintiff's claim of nonpayment prior to the January 2015 asset |
| 21 | purchase agreement. Consequently, Defendant NorthStar has not demonstrated that |
| 22 | Plaintiff's services were not performed upon Defendant NorthStar's express or implied |
| 23 | request, and did not result in a benefit to Defendant NorthStar. |
| 24 | /// |
| 25 | /// |
| 26 | /// |
| 27 | /// |
| 28 | /// |

**CONCLUSION**

For the reasons set forth above, Defendant NorthStar's Motion for Partial Summary Judgment (ECF No. 36) is DENIED.

IT IS SO ORDERED

Dated: September 21, 2017

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE